UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITRUS HMA, LLC, d/b/a SEVEN RIVERS REGIONAL MEDICAL CENTER, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> XAVIER BECERRA, Secretary of U.S. Department of Health and Human Services, [1] <br><br> Defendant. | Civil Action No. 20-707 (CKK) |

MEMORANDUM OPINION
(April 8, 2022)

Thirty-four hospitals located in urban areas of Arizona, Connecticut, and Florida ("Plaintiffs") bring this action under the Administrative Procedure Act ("APA") against Secretary of Health and Human Services Xavier Becerra ("Defendant" or "the Secretary"). Plaintiffs contend that they were reimbursed at lower rates than "rural" hospitals in their respective states in FY 2020, in violation of the Medicare statute. Pending before this Court are Plaintiffs' [23] Motion for Summary Judgment and Defendant's [26] Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment. Upon consideration of the pleadings,[2] the relevant legal authorities, and for the reasons below, the Court finds that the Medicare statute

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes Xavier Becerra, Secretary of the U.S. Department of Health and Human Services.

[2] The Court's consideration has focused on the following documents:
- Plaintiffs' Motion for Summary Judgment ("Pls.' Mot."), ECF No. 23;
- Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Def.'s Cross-Mot. & Opp'n"), ECF No. 26;
- Plaintiffs' Reply in Support of Plaintiffs' Motion for Summary Judgment and Opposition to Defendant's Cross-Motion for Summary Judgment ("Pls.' Reply & Opp'n"), ECF No. 28; and
- Defendant's Reply in Support of Defendant's Cross-Motion for Summary Judgment ("Def.'s Reply), ECF No. 30.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

1

unambiguously bars the methodology employed by the Secretary in FY 2020, which resulted in Plaintiffs being reimbursed at lower rates than rural hospitals in their same states. Accordingly, the Court shall grant in part Plaintiffs' Motion for Summary Judgment, but shall remand this action to the Secretary for further proceedings consistent with this Memorandum Opinion without vacating the Secretary's rule. The Court shall deny Defendant's Cross-Motion for Summary Judgment.

## I.   BACKGROUND

### A. Statutory and Regulatory Background

The Medicare statute, Title XVII of the Social Security Act, provides healthcare coverage and insurance for the elderly and disabled. 42 U.S.C. § 1395, *et seq*. The Center for Medicare & Medicaid Services ("CMS") administers the Medicare program on behalf of the Secretary. Through the Medicare program, the federal government reimburses healthcare providers for hospital inpatient services at predetermined rates, known as the inpatient prospective payment system ("IPPS"). The methodology for calculating these rates is prescribed by 42 U.S.C. § 1395ww(d). Under IPPS, hospitals are paid a fixed, predetermined amount depending on a patient's category of illness—rather than for the actual costs incurred for a particular patient's care. *See Anna Jacques Hosp. v. Burwell*, 797 F.3d 1155, 1157–58 (D.C. Cir. 2015) ("[IPPS] reimburses hospitals for medical care requiring at least one night's stay on the basis of a preestablished formula, regardless of the actual costs incurred by the hospital."). These categories are referred to as "diagnostic-related groups" ("DRGs"). *See* 42 U.S.C. § 1395ww(d)(2)(G); *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1227 (D.C. Cir. 1994). CMS assigns a weight for each DRG reflecting how the cost of treating such diagnosis compares to the costs of treating the average inpatient. *See* 42 U.S.C. § 1395ww(d)(4)(B); *Anna Jacques Hosp.*, 797 F.3d at 1158. The more

expensive the treatment for a DRG is relative to the average Medicare inpatient, the greater the weight assigned to that DRG. Final payments under IPPS are calculated by multiplying the patient's DRG weight by a standardized amount equivalent to the cost of treating the average patient. 42 U.S.C. § 1395ww(d)(3)(D)(iii).

### 1. Wage Index Adjustment

Because a significant portion of a hospital's costs are attributable to wages and labor costs—which vary widely among geographic areas—the Secretary is required to adjust IPPS rates to account for these differences through a "wage index adjustment." 42 U.S.C. § 1395ww(d)(3)(E); *see also Anna Jacques Hosp.*, 797 F.3d at 1157 ("To help compensate for those disparities, the Medicare Act charges the Secretary of Health and Human Services with computing annually a 'wage index' that compares hospital wages within defined geographic areas to a national average, and adjusts Medicare reimbursements accordingly."). Because, as a general matter, labor costs tend to be higher in "urban" areas than in "rural" areas, *see, e.g.*, Def.'s Cross-Mot. & Opp'n at 6, the wage index adjustment ensures that "urban" hospitals are not undercompensated for their services and that "rural" hospitals are not overcompensated. Specifically, the statute provides:

> [T]he Secretary shall adjust the proportion, (as estimated by the Secretary from time to time) of hospitals' costs which are attributable to wages and wage-related costs, of the DRG prospective payment rates computed under subparagraph (D) for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.

42 U.S.C. § 1395ww(d)(3)(E)(i). The "factor" is equivalent to the "wage index," which is a comparison of the average hospital wages in a particular geographic area to the national average hospital wage. *Anna Jacques Hosp.*, 797 F.3d at 1158.

3

For the purposes of the wage index, there are two types of geographic locations: "urban" and "rural." 42 C.F.R. § 412.64(h). An "urban" area is a Metropolitan Statistical Area ("MSA"), as defined by the Office of Management and Budget. 42 U.S.C. § 1395ww(d)(2)(D); *see also* 42 C.F.R. § 412.64(b)(1)(ii)(A). The Secretary calculates a distinct wage index adjustment for *each* "urban" area in the country. *See, e.g.*, 79 Fed. Reg. 49,854-01, 49,951 (Aug. 22, 2014). In this Memorandum Opinion, the Court shall refer to hospitals located in "urban" areas as "urban hospitals." "Rural" areas are any areas outside of an urban area. 42 U.S.C. § 1395ww(d)(2)(D); *see also* 42 C.F.R. § 412.64(b)(1)(ii)(C). Instead of calculating a distinct wage index adjustment for each rural area (as is the case with urban areas), the Secretary calculates only *one* rural wage index adjustment for each state. *See, e.g.*, 69 Fed. Reg. 48,916-01, 49,026 (Aug. 11, 2004). The Court shall refer to hospitals located in "rural" areas as "rural hospitals." As an example, in a state with two distinct "urban" areas, an "urban wage index" specific to each area would apply to "urban hospitals," whereas the "rural wage index" would apply to *all* remaining hospitals in the same state—the "rural hospitals."

The Secretary updates the area wage indexes annually by conducting a survey of wage and hour data of all Medicare-participating IPPS hospitals nationally. 42 U.S.C.§ 1395ww(d)(3)(E)(i).

   2. **Rural Reclassification**

In the Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999 ("BBRA"), Congress created a mechanism through which urban hospitals can apply to be treated as if they were located within a state's "rural" area for purposes of IPPS payments. BBRA, Pub. L. 106-113, § 401, 113 Stat. 1501, 1501A–321 (codified as 42 U.S.C. § 1395ww(d)(8)(E)). In

effect, this "rural reclassification" transforms an otherwise urban hospital into a rural one. Specifically, the statute provides

> For purposes of this subsection [IPPS], not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a subsection (d) hospital described in clause (ii), the Secretary *shall treat the hospital as being located in the rural area* (as defined in paragraph (2)(D)) *of the State in which the hospital is located*.

42 U.S.C. § 1395ww(d)(8)(E)(i) (emphasis added). If an urban hospital satisfies the criteria specified by clause (ii),[3] that hospital is treated as if it were "located within the rural area" of the relevant state for purposes of IPPS payments. *Id.* For clarity, the Court shall refer to such eligible "urban hospitals" that have elected to be treated as if they are "rural hospitals" as "reclassified urban-to-rural hospitals."

In calculating the rural wage index of a particular state, the Secretary includes wage data from both rural hospitals and reclassified urban-to-rural hospitals. *See, e.g.*, 42 C.F.R. § 412.103(b)(6) (addressing timing requirements for reclassified hospitals to be included in the rural wage index calculations). Because reclassified urban-to-rural hospitals tend to have higher labor costs than rural hospitals, including wage data from reclassified urban-to-rural hospitals in calculating the rural wage index typically increases the rural wage index as compared to a rural wage index based on rural hospitals alone.

---

[3] Clause (ii) of 42 U.S.C. § 1395ww(d)(8)(E) provides:
    For purposes of clause (i), a subsection (d) hospital described in this clause is a subsection (d) hospital that is located in an urban area (as defined in paragraph (2)(D)) and satisfies any of the following criteria:
    (I) The hospital is located in a rural census tract of a metropolitan statistical area (as determined under the most recent modification of the Goldsmith Modification, originally published in the Federal Register on February 27, 1992 (57 Fed. Reg. 6725)).
    (II) The hospital is located in an area designated by any law or regulation of such State as a rural area (or is designated by such State as a rural hospital).
    (III) The hospital would qualify as a rural, regional, or national referral center under paragraph (5)(C) or as a sole community hospital under paragraph (5)(D) if the hospital were located in a rural area.
    (IV) The hospital meets such other criteria as the Secretary may specify.

### 3. Rural Floor Provision

As part of the Balanced Budget Act of 1997 ("BBA"), Congress enacted the so-called "rural floor" provision in response to finding "[a]n anomaly" in area wage indexes where some urban hospitals were being "paid less than the average rural hospital in their state[]." Balanced Budget Act of 1997, Pub. L. 105-33, § 4410, 111 Stat. 251 (uncodified as 42 U.S.C. § 1395ww NOTE); H.R. Rep. No. 105-149, at 1305 (1997). This provision was designed to correct this anomaly by establishing what is known as the "rural floor"—which sets the rural wage index for a particular state for which urban hospital wage indexes in that state cannot go below. Specifically, the rural floor provision states:

> For purposes of section 1886(d)(3)(E) of the Social Security Act (42 U.S.C. 1395ww(d)(3)(E)) . . . *the area wage index applicable* under such section *to any hospital which is not located in a rural area* (as defined in section 1886(d)(2)(D) of such Act (42 U.S.C. 1395ww(d)(2)(D)) *may not be less than the area wage index applicable under such section to hospitals located in rural areas* in the State in which the hospital is located.

BBA § 4410(a) (42 U.S.C. § 1395ww NOTE) (emphases added). In other words, no urban hospital can receive a wage index below the rural wage index of the same state. For example, if a state's rural wage index is 0.9, the rural floor provision operates to ensure that no urban wage index can fall below 0.9. Additionally, the Secretary is required to implement the rural floor in a budget-neutral manner so that IPPS payments "are not greater or less than those which would have been made" in that particular fiscal year had the rural floor provision not been applied. *Id.* § 4410(b).

### B. Factual Background

The Secretary annually publishes in the Federal Register proposed changes to IPPS polices and applicable rates for the upcoming fiscal year. *See* 42 U.S.C. § 1395ww(e)(5); 42 C.F.R. § 412.8. Typically, the Secretary issues a Proposed Rule "identifying all changes that he proposes

6

to make, based on statutory amendments as well as the Secretary's 'continuing experience' with the IPPS." Def.'s Cross-Mot. & Opp'n at 10 (quoting 84 Fed. Reg. 19,158, 19,158 (May 3, 2019)).

Prior to the proposed FY 2020 rule, the Secretary had calculated the "rural floor" as equivalent to the "rural wage index"—including data from *both* rural hospitals *and* reclassified urban-to-rural hospitals in the determination of the rural wage index (and therefore the rural floor). *See* Def.'s Cross-Mot. & Opp'n at 10; Pls.' Mot. at 10. However, for FY 2020, the Secretary proposed modifying the method for calculating the "rural floor" by omitting reclassified urban-to-rural hospitals from the calculation of the rural floor. *See* 84 Fed. Reg. at 19,162–63. However, these reclassified urban-to-rural hospitals would still be included in determining the rural wage index. *See id.* at 19,397–98 (explaining that reclassified hospital data would be used for calculation of the rural wage index but not the rural floor). In sum, the Secretary proposed to create two separate rural wage indexes, one for purposes of determining the rural floor (excluding reclassified urban-to-rural hospitals) and the other for general rural wage index IPPS reimbursement purposes (including reclassified urban-to-rural hospitals). As urban-to-rural reclassified hospitals tend to have higher wages than rural hospitals in a particular state, removing such reclassified hospitals from the calculation of the rural floor has the effect of decreasing the rural floor and thereby reducing the minimum reimbursement rate for urban hospitals.

The Secretary explained that the purpose of this revised methodology was to mitigate wage index disparities caused by the inclusion of rural reclassified hospitals raising a state's rural wage index and applicable rural floor. 84 Fed. Reg. 42,044-01, 42,333 (Aug. 16, 2019). The Secretary further explained that "the rural floor policy was meant to address anomalies of some urban hospitals being paid less than the average rural hospital in their States, not to raise the payments of many hospitals in a State to the high wage level of a geographically urban hospital." *Id.* at

7

42,332. Such "urban to rural reclassifications," the Secretary opined, "have stretched the rural floor provision beyond a policy designed to address such anomalies," and "the inclusion of reclassified hospitals in the rural floor calculation has had the unforeseen effect of exacerbating the wage index disparities between low and high wage index hospitals." *Id.* at 42,333. "[W]e believe an adjustment is necessary to address the unanticipated effects of urban to rural reclassifications on the rural floor and the resulting wage index disparities, including the inappropriate wage index disparities caused by the manipulation of the rural floor policy by some hospitals." *Id.* In support of this change, the Secretary explained that "the rural floor statute does not specify how the rural floor wage index is to be calculated or what data are to be included in the calculation" nor does the rural reclassification statute "specify where the wage data of reclassified hospitals must be included." *Id.*

The Secretary employed this new methodology for calculating each state's "rural floor" for the first time in FY 2020. *Id.* In several states, the new formula resulted in a rural floor that was lower than the rural wage index. *See* Pls.' Mot. at 11. Consequently, some urban hospitals were assigned wage indexes below the relevant rural wage index but either at or above the (lower) rural floor. *See id.* Plaintiffs in this action are thirty-four urban hospitals located in Arizona, Connecticut, and Florida that received lower wage indexes than the applicable rural wage index in their particular state based on the Secretary's methodology for FY 2020. *See id.* at 13.

In February 2020, Plaintiffs filed six separate appeals before the Provider Review Reimbursement Board ("PRRB"), an administrative body located within the Department of Health and Human Services with authority to hear Medicare reimbursements disputes, arguing that the Secretary had assigned Plaintiffs lower wage indexes than allowed under the Medicare statute. *See id.*; Def.'s Cross-Mot. & Opp'n at 13. Because the PRRB determined that it lacked "authority to

8

decide the legal question of whether the Uncodified Regulation of Rural Reclassification as published in the FY 2020 IPPS final rule is valid," it granted Plaintiff's expedited judicial review allowing Plaintiffs to bring suit in federal district court.  Def.'s Cross-Mot. & Opp'n at 13.  Plaintiffs then commenced this action.  The parties have now cross-moved for summary judgment.

## II.   LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  However, "when a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal.  The 'entire case' on review is a question of law."  *Am. Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1083 (D.C. Cir. 2001).  Accordingly, "the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record . . . .  Summary judgment is [ ] the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review."  *Southeast Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness."  *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 513 (2009).  It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are either "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C).  "This is a 'narrow' standard of review as courts defer to the agency's expertise."  *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)).  However, an

agency is still required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (internal quotation omitted). "Moreover, an agency cannot 'fail[ ] to consider an important aspect of the problem' or 'offer[ ] an explanation for its decision that runs counter to the evidence' before it." *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 57 (D.C. Cir. 2015) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

An agency's construction of a statute it administers is reviewed under the familiar two-step framework set forth in *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). When deciding whether to apply *Chevron* deference, initially, the Court must ask whether "Congress has directly spoken to the precise question at issue." If so, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. However, if "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* As long as the agency's interpretation is "reasonable and consistent with the statute's purpose," the Court must defer to the agency's interpretation. *Chemical Mfrs. Ass'n v. EPA*, 217 F.3d 861, 866 (D.C. Cir. 2000).

"[I]n framing the scope of review, the court takes special note of the tremendous complexity of the Medicare statute. That complexity adds to the deference which is due to the Secretary's decision." *Methodist Hosp. of Sacramento*, 38 F.3d at 1229; *see also Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) ("The broad deference of *Chevron* is even more appropriate in cases that involve a 'complex and highly technical regulatory program,' such as Medicare, which 'require[s] significant expertise and entail[s] the exercise of judgment grounded in policy concerns.'").

### III.     DISCUSSION

**A. The Secretary's FY 2020 Methodology Is Inconsistent with the Rural Floor Provision of the Medicare Statute.**

Plaintiffs argue that the Secretary has violated the plain text of the Medicare Act by calculating a rural floor that is different from the rural wage index. According to Plaintiffs, the rural floor provision of the statute, 42 U.S.C. § 1395ww NOTE, unambiguously requires the Secretary to calculate a rural wage index using wage data from *both* geographically rural and reclassified urban-to-rural hospitals, and then to set the rural floor at that wage index level. Plaintiffs contend that the methodology adopted by the Secretary for FY 2020 violates the statute because the Secretary separately calculated a "rural floor" that excluded urban-to-rural reclassified hospitals. In response, the Secretary argues that the relevant statutory language is ambiguous as to how the Secretary should calculate the rural floor and how data from urban-to-rural reclassified hospitals must be used. Further, the Secretary argues that his interpretation of the statutory language—excluding reclassified urban-to-rural from the rural floor calculation—is reasonable and therefore deserving of deference from this Court.

To evaluate Plaintiffs' claim that the Secretary's methodology for calculating the "rural floor" for FY 2020 is inconsistent with the statute, the Court must first apply the "ordinary tools of statutory construction" to determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *City of Arlington v. F.C.C.*, 569 U.S. 290, 296 (2013) (quoting *Chevron*, 467 U.S. at 842–43). But if "the statute is silent or ambiguous with respect to the specific issue . . . [the Court] move[s] to the second step and defer[s] to the agency's interpretation as long as it is based on a permissible construction of the statute." *Noramco of Del., Inc. v. DEA*, 375 F.3d 1148,

1152–53 (D.C. Cir. 2004) (internal citations and quotation marks omitted). "If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005).

Here, Plaintiffs contend that the Court need only address the first step of *Chevron*, arguing that the Medicare Act unambiguously forbids the Secretary from first calculating a wage index for purposes of establishing the rural floor, excluding wage data from urban hospitals that have been reclassified as rural, and then calculating a separate rural wage index for the purpose of reimbursement of rural hospitals, inclusive of the data of reclassified urban-to-rural hospitals.[4] *See* Pls.' Mot. at 14–22. The Court agrees with Plaintiffs and therefore addresses only the first step of *Chevron*.

The Court begins with the language of the relevant statutes. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself."). As quoted above, the rural floor provision directs that for "purposes of" the wage index provision, 42 U.S.C. § 1395ww(d)(3)(E), the "area wage index applicable under such section to any hospital which is not located in a rural area . . . may not be less than the area wage index applicable under such section to hospitals located in rural areas in the State in which the hospital is located." 42 U.S.C. § 1395ww NOTE. The plain language provides that the urban area wage

---

[4] Defendant frames the issue slightly differently, suggesting instead that the central question is whether the statute unambiguously requires the Secretary to include the data from reclassified urban-to-rural hospitals when calculating the rural floor. But this framing assumes as true the very thing in dispute in this case: whether the statute provides for a separate and independent calculation of the rural floor. Because the antecedent question of whether the Medicare statute speaks to the calculation of a rural floor separate from that of the rural wage index must first be answered, the Court declines to accept Defendant's framing.

12

index cannot be less than "the area wage index applicable under such section [42 U.S.C. § 1395ww(d)(3)(E)]" to rural hospitals. The statute's use of the word "the" in the phrase "the area wage index" indicates that Congress contemplated that there would be *one* wage index for rural hospitals for each state. But under the Secretary's proffered construction, there are effectively now *two* rural wage indexes for each state, in contravention of the statute. Nothing in the statutory texts supports Defendant's argument that the Secretary may calculate a rural wage index solely for purposes of determining the rural floor. Indeed, the statute does not speak to any rural wage index calculation whatsoever.[5] At most, the statute constrains how the *urban* wage index must be calculated by setting a minimum below which the urban wage index cannot fall. But it does not follow that the statutory language independently allows for a novel calculation of the *rural* wage index or affects the rural wage index in any way.

Moreover, the rural floor statute directly references the rural wage index calculated by the Secretary: "*the area wage index applicable under such section*." 42 U.S.C. § 1395ww NOTE (emphasis added). For rural hospitals, there is only one "area wage index applicable under [42 U.S.C. § 1395ww(d)(3)(E)]"—the one calculated by the Secretary for purposes of that section. If Congress had intended the Secretary to calculate anew the rural wage index for purposes of establishing the rural floor, then the explicit language linking the wage index used for the rural floor to the same rural wage index otherwise calculated for reimbursement purposes under § 1395ww(d)(3)(E) contradicts such a reading. The more natural reading is that a rural wage index is calculated pursuant to § 1395ww(d)(3)(E) and the rural floor provision then takes that number and sets that as the floor for which the urban wage index cannot go below. In simpler terms, as

---

[5] A statute providing only that "A must be greater than or equal to B" certainly does not determine how to calculate B or suggest that B may be calculated in a manner differently than that provided by a separate statute explaining how to calculate B.

Plaintiffs put it: "Since the rural wage index is, by definition, the 'wage index applicable to hospitals located in rural areas [of the] State,' it must also set the rural floor." Pls.' Mot. at 16. To hold otherwise would be to say that the language does not mean what it plainly says.

Defendant maintains that the word "applicable" as used in the rural floor provision "has a broader meaning . . . leaving open the possibility that the Secretary may calculate a wage index value applicable to geographically rural hospitals . . . for setting the rural floor, but ultimately decide to assign or award rural hospitals a higher wage index value that is calculated using the wage data of both [geographically] rural hospitals and urban-to-rural reclassified hospitals." Def.'s Reply at 5. According to Defendant, "applicable," means "capable of being applied" and "does not necessarily mean actually applied" or "assigned" or "awarded." *Id.* The Secretary argues that this definition affords discretion to calculate separately the rural floor from the rural wage index because there could be more than one wage index "applicable under [the statute]." *Id.*

Such a construction of the statutory language is in tension with the plain meaning of the language as a whole. The phrase "applicable under such section [42 U.S.C. § 1395ww(d)(3)(E)]" modifies the phrase "the area wage index." Without the phrase "applicable under such section," the reader is left guessing as to what the "area wage index" is and where to find it. That clause connects the rural floor provision to the rural wage index. It, therefore, makes little sense to believe that Congress, despite referencing the wage index, meant for the Secretary to disregard the wage index as calculated under § 1395ww(d)(3)(E), and instead calculate a different index using different criteria.

As to the word "applicable," the text indicates that term is being used in the sense of relevant, pertinent, or germane. That is, to determine the rural floor, the Secretary must use the

"applicable" or relevant area wage index as determined in 42 U.S.C. § 1395ww(d)(3)(E).[6] There is no room in the statutory language for a free-floating area wage index that is calculated for rural floor purposes without regard for the area wage index calculated pursuant to § 1395ww(d)(3)(E). To construe the language otherwise would be to render a whole phrase of the statutory text without meaning. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 258 (1993) ("We will not read the statute to render the modifier superfluous"); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 476–77 (2003) ("[W]e should not construe the statute in a manner that . . . would render a statutory term superfluous.").

Defendant correctly notes that certain provisions of the Medicare Act relevant here do contain ambiguities and allow the Secretary discretion in certain regards. For example, this Circuit has held as ambiguous the language in 42 U.S.C. § 1395ww(d)(3)(E) concerning the exact method of calculating the *area wage indexes*, allowing the Secretary wide latitude in determining how to calculate the applicable indexes. *See Anna Jacques Hosp.*, 797 F.3d at 1164–65 (citing *Bellevue Hosp. Ctr. v. Leavitt*, 443 F.3d 163, 175 (2d Cir. 2006)). *But cf. Bellevue Hosp. Ctr.*, 443 F.3d at 174 ("[The Secretary's] task is unambiguous: to calculate a factor that reflects geographic-area wage-level differences, and nothing else."). But, even accepting the Secretary's authority to determine the precise manner by which the *area wage indexes* are calculated does not answer the question posed here: whether the Secretary may *separately* calculate an index for the rural floor that is methodologically distinct from the rural wage index. Merely relying, as the Secretary does, on the observation that the Medicare statute is large and complex and has a number of ambiguous

---

[6] To further illustrate this point, imagine a linguistically similar statute that specifies that a court is to give to a winning plaintiff a "fee applicable under such section [referring to a statutory provision setting out the calculation of such fee]." In such a case, the court, to decide the fee to give to plaintiff, would have to resort to reference to the other statute to calculate the fee, *i.e.*, find the fee "applicable" under the statute. It would make little sense for a court to interpret such language as authorizing it to create two separate fee calculations.

provisions to conclude that the provisions relevant here are ambiguous and capable of being interpreted by the Secretary is insufficient. *See, e.g.*, Def.'s Cross-Mot. & Opp'n at 17–18, 23; *cf. Bates Cty. Mem'l Hosp. v. Azar*, 464 F. Supp. 3d 43, 50–51 (D.D.C. 2020) (describing several cases where the Secretary's argument as to the ambiguity of provisions of the Medicare statute has been rejected).

Because the Court finds that the rural floor provision unambiguously provides that the level of the rural floor for a state is set at the applicable rural wage index of that same state—*i.e.*, the rural floor and the rural wage index are one and the same—Defendant's decision to calculate separately those indexes using differing methodology violated the statute. Put plainly, the statute provides no room for the Secretary to "fix" whatever anomalies he may think exists in the operation of the statute.[7] A court cannot "set aside a statute's plain language simply because the agency thinks it leads to undesirable consequences in some applications." *Friends of Earth*, 446 F.3d at 145. After all, "[o]ur task is to apply the text, not to improve upon it." *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 126 (1989). In sum, the Court agrees that Defendant's method of separately calculating the "rural floor" and the "rural wage index" for FY 2020 violated the unambiguous language of the "rural floor" provision of the Medicare statute.

Before addressing the appropriate remedy, the Court notes that Plaintiffs have additionally argued that the Secretary's FY 2020 rural floor calculation independently violates the rural reclassification provision, 42 U.S.C. § 1395ww(d)(8)(E)(i), because the Secretary is not, in

---

[7] This is not to impugn the motives of the Secretary, who seemed plainly concerned with reducing potential manipulation of area wage indexes and improving the operation of the IPPS program. But no amount of good intention can override the clear commands that Congress has expressed in enacting a statute. The Secretary is bound to follow the plain text of the law regardless of whether he believes it to be wise or the best course of action. The Secretary may not "avoid the Congressional intent clearly expressed in the text simply by asserting that [his] preferred approach would be better policy." *Friends of Earth, Inc. v. E.P.A.*, 446 F.3d 140, 145 (D.C. Cir. 2006) (quoting *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1089 (D.C. Cir. 1996)). Just as this Court is required to defer to the Secretary's considered judgment in cases of genuine textual ambiguity, so too is the Secretary required to "give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43.

contradiction of the statute, treating reclassified urban-to-rural hospitals as if they were located in the rural area of a state. *See, e.g.*, Pls.' Mot. at 22–26. By excluding reclassified urban-to-rural hospitals from the calculation of the rural floor, Plaintiffs contend, the Secretary is not following the unambiguous dictates of the rural reclassification statute. Because the rural floor provision unambiguously requires the Secretary to set the rural floor equivalent to the rural wage index and forbids the Secretary from developing an alternative calculation for rural floor purposes, the Court does not address whether the Secretary was required to include data from reclassified urban-to-rural hospital wage data in the calculation of the rural floor, a calculation which does not actually exist independently under the statute.[8]

**B. Remand Without Vacatur is Appropriate.**

Having concluded that the Secretary erred in calculating separately the rural wage index and the rural floor for FY 2020, the Court next considers the appropriate remedy. "When a district court reverses agency action and determines that the agency acted unlawfully, ordinarily the appropriate course is simply to identify a legal error and then remand to the agency." *N. Air Cargo v. USPS*, 674 F.3d 852, 861 (D.C. Cir. 2012); *see also Am. Hosp. Ass'n v. Azar*, 385 F. Supp. 3d 1, 11 (D.D.C. 2019) ("[W]hen a plaintiff brings an APA claim 'to set aside an unlawful agency action . . . it is the prerogative of the agency to decide in the first instance how to best provide relief.'" (quoting *Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013)).

Both parties agree that remand to the Secretary is appropriate. *See* Pls.' Reply & Opp'n at 13; Defs.' Cross-Mot. & Opp'n at 27. Plaintiffs, however, seek remand "with instructions that

---

[8] The Court notes that several courts, including one in this Circuit, have held that the rural reclassification provision, 42 U.S.C. § 1395ww(d)(8)(E)(i), unambiguously requires the Secretary to treat reclassified urban-to-rural hospitals as though they are geographically rural and not located in an urban area. *See Bates Cty. Mem'l Hosp.*, 464 F. Supp. 3d at 50–52; *Geisinger Cmty. Med. Ctr. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 794 F.3d 383, 395 (3d Cir. 2015).

[the Secretary] assign an area wage index to each hospital that is no lower than the wage index . . . assigned to rural hospitals in the [Plaintiffs'] home states of Arizona, Colorado, or Florida." Pls.' Reply & Opp'n at 13; *see also* Pls.' Mot. at 27–28 (seeking an order "vacating the Secretary's challenged policy," and directing the Secretary to "treat the 2020 rural wage index as the rural floor" and to "recalculate each [Plaintiff's] FY 2020 wage index adjustments and payments accordingly"). Defendant counters that the appropriate relief is "remand (without vacatur)" to the Secretary for "further action" consistent with the Court's opinion. Defs.' Cross-Mot. & Opp'n at 27 (citing *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005)).

      The Court shall remand the case to the Secretary for further proceedings but shall not vacate the FY 2020 rule. In deciding whether to remand without vacatur, courts consider "the seriousness of the [agency decision's] deficiencies . . . and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). The Secretary here rests his argument in support of remand without vacatur on *Allied-Signal's* second prong, arguing that vacating the FY 2020 rule would "greatly disrupt the complex Medicare [IPPS] system," with "potential consequences for payments to hospitals that are not parties to this case." *Id.* Defendant further notes that the IPPS system must operate on a "budget-neutral" basis, and that a court order vacating the FY 2020 rule "could require unscrambling and revising interdependent budget-neutral reimbursement decisions already made, since any amount of gain to Plaintiffs' hospitals that might result from the Court's order might have to be offset by recoupments from other hospitals nationwide." *Id.* at 28. Although Plaintiffs contend that the "budget-neutrality requirements" do not bar the Court from ordering a recalculation of their payments, Pls.' Reply & Opp'n at 14, the Court agrees that the Secretary should address the appropriate adjustment of Plaintiffs' reimbursement rates in the first instance,

*see* Defs.' Reply at 16–17; *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1111 (D.C. Cir. 2014). Accordingly, the Court shall remand this action to the Secretary for further proceedings consistent with this Memorandum Opinion.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is granted in part, and Defendants' Cross-Motion for Summary Judgment is denied.   This case shall be remanded to the Secretary for further proceedings consistent with this Memorandum Opinion. A separate order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date: April 8, 2022